**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 20 2000**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

DAVIS-WARREN AUCTIONEERS,
J.V.,

      Plaintiff - Appellant,

    v.

FEDERAL DEPOSIT INSURANCE
CORPORATION,

      Defendant - Appellee.

No. 99-1374

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D. Ct. No. 97-WM-854)**

William H. ReMine, III, Rossi & Maricle, P.C., Denver, Colorado, appearing for
the Appellant.

Lawrence H. Richmond, Counsel (Ann S. DuRoss, Assistant General Counsel, and
Colleen J. Boles, Senior Counsel, with him on the brief), Federal Deposit
Insurance Corporation, Washington, DC, appearing for the Appellee.

Before **TACHA**, **HOLLOWAY**, and **BALDOCK**, Circuit Judges.

**TACHA**, Circuit Judge.

Davis-Warren Auctioneers appeals the district court's dismissal of its

complaint pursuant to Rule 12(b)(6). Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

## I.

Late in 1994, the Resolution Trust Corporation (RTC) solicited offers for a contract to auction assets owned by its Denver office. Davis-Warren submitted a series of responsive bids. The first bid included a request for statutorily mandated special consideration in light of Davis-Warren's majority African-American ownership.

Davis-Warren alleges that an RTC representative telephoned the company to accept the final Davis-Warren offer. Subsequently, the company alleges, RTC representatives met personally with Davis-Warren officers and informed them that the RTC was 1) revoking its award of the contract to Davis-Warren and 2) awarding the contract instead to a nonminority-owned firm whose bid price significantly exceeded that of Davis-Warren. Claiming that the RTC's actions were racially motivated, Davis-Warren brought this suit against the Federal Deposit Insurance Corporation, the RTC's statutory successor.

## II.

We review a 12(b)(6) dismissal de novo. Sutton v. Utah State Sch. for the Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999). We accept all well-pled allegations in the complaint as true and view them in the light most favorable to

the nonmoving party.  Id.  "A 12(b)(6) motion should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Id. (internal quotation marks and citation omitted).

A.

Davis-Warren first claims that the RTC violated 42 U.S.C. § 1981 when it revoked its alleged acceptance of the Davis-Warren offer and awarded the auction contract to a nonminority-owned firm.  This claim lacks merit.  Section 1981(a) does provide that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens. . . ."  In 1991, however, Congress amended § 1981 to include the stipulation that "[t]he rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law." §1981(c) (emphasis added).  Because the RTC was a government entity acting under color of federal, not state law, § 1981 by its terms is inapplicable to this case.

Davis-Warren concedes that a "superficial" reading of § 1981(c) "might" imply that the statute reaches only private actors and those acting under color of state law.  Appellant's Br. at 12.  The company urges a broader reading of the statute, however, claiming that it also proscribes discrimination under color of

federal law. Davis-Warren cites several circuit and district court decisions in support of its argument. See City of Milwaukee v. Saxbe, 546 F.2d 693 (7th Cir. 1976); Penn v. Schlesinger, 490 F.2d 700 (5th Cir.), rev'd on other grounds, 497 F.2d 970 (5th Cir. 1974); Baker v. F& F Investment Co., 489 F.2d 829 (7th Cir. 1973); Young v. Pierce, 544 F. Supp. 1010 (E.D. Tex. 1982); Henry v. Schlesinger, 407 F. Supp. 1179 (E.D. Pa. 1976).

All of the decisions cited by the company precede the 1991 amendments. Since Congress amended the statute, the weight of judicial authority has held that § 1981 does not protect against alleged discrimination under color of federal law. See Davis v. United States Dep't of Justice, 204 F.3d 723, 725-26 (7th Cir. 2000) (finding that the language of § 1981(c) precludes application of the statute to alleged discrimination under color of federal law); Lee v. Hughes, 145 F.3d 1272, 1277 (11th Cir. 1998), cert. denied, 525 U.S. 1138 (1999) (same); Williams v. Glickman, 936 F. Supp. 1, 3-4 (D.D.C. 1996) (same). But see La Compania Ocho, Inc. v. United States Forest Serv., 874 F. Supp. 1242, 1251 (D.N.M. 1995) (finding that Congress intended the 1991 amendments "to expand the scope of civil rights protection, not limit it").

We join the Seventh and Eleventh Circuits in holding that § 1981 is inapplicable to alleged discrimination under color of federal law. The language of § 1981(c) could hardly be more clear: "The rights protected by this section are

- 4 -

protected against impairment by nongovernmental discrimination and impairment under color of State law." The defendant in this case is clearly governmental and, just as clearly, did <u>not</u> act under color of state law. Therefore, § 1981, by its terms, does not apply to this defendant.

B.

Davis-Warren next claims that the RTC violated 12 U.S.C. § 1441a(r), which provides that

> [i]n the review and evaluation of proposals, the [RTC] shall provide additional incentives to minority- or women-owned businesses by awarding any such business an additional 10 percent of the total technical points and an additional 5 percent of the total cost preference points achievable in the technical and cost rating process applicable with respect to such proposals.

The question we must decide is not whether the RTC violated this provision, however, but whether Davis-Warren can invoke it in a private action. The company concedes that § 1441a(r) affords no express right of action, but argues that such a right exists implicitly. We disagree.

To decide whether a private right of action is implicit in a statute, we must determine "whether Congress, expressly or by implication, intended to create a private cause of action." <u>Sonnenfeld v. Denver</u>, 100 F.3d 744, 747 (10th Cir. 1996). We exercise great caution in finding an implied right of action. <u>See</u> <u>Musick, Peeler & Garrett v. Employers Ins. of Wausau</u>, 508 U.S. 286, 291 (1993) (noting that precedent "teach[es] that the creation of new rights ought to be left to

- 5 -

legislatures, not courts").

The language of § 1441a(r) contains no statement of Congressional intent to afford a private right of action.  The legislative history cited by Davis-Warren does not help the company.  According to a legislative conference report,

> [t]he RTC must adopt written procedures for selling or otherwise disposing of insured institutions and their assets, and must document its decisions and reasons.  The RTC must document decisions so that any transaction involving the exercise of its statutory powers may be adequately reviewed.

H.R. Conf. Rep. No. 101-222, at 413 (1989).  Leaving to one side the fact that this passage refers to the assets of insured institutions rather than of the RTC itself, we find that it does not indicate a Congressional intent to afford minority-owned businesses a private right of action.

We conclude that Davis-Warren can prove no set of facts in support of its claim which would entitle the company to relief.

AFFIRMED.