**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 24 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

NICOLETTE M. GONZALEZ,

    Plaintiff - Appellant,

vs.

UNITED STATES AIR FORCE,

    Defendant - Appellee.

No. 03-6047
(D.C. No. CIV-02-629-A)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **LUCERO**, and **O'BRIEN**, Circuit Judges.

Plaintiff-Appellant Nicolette M. Gonzalez appeals from the district court's

judgment dismissing her complaint with prejudice. After raising the possibility of

lack of subject matter jurisdiction based upon Feres v. United States, 340 U.S.

135 (1950), and allowing the Plaintiff to respond, the district court dismissed

Plaintiff's FTCA claims. Subsequently, the court granted the government's

motion to dismiss the remaining claims. We exercise jurisdiction pursuant to 28

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. This court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

U.S.C. § 1291.  Though this case involves tragic facts, we affirm.


Background

The events giving rise to this lawsuit took place in 1999, while Plaintiff was an active duty member of the United States Air Force.  In July of that year Plaintiff was temporarily assigned to Altus Air Force Base, Oklahoma, for training.  On the afternoon of July 19, Plaintiff attended an on-base party which was taking place in an open patio or "mod" area in the vicinity of the enlisted barracks.  Both military and civilian personnel were in attendance at the party. Despite Plaintiff's status as a minor, alcoholic beverages were readily available. She had too much to drink and became ill.  She was then assisted in returning to her barracks by two service members including one Kerry Nazario, her would-be attacker.

Airman Nazario then was served alcohol at the E-Club on base.  At some point during the evening, while Plaintiff slept, Airman Nazario returned to Plaintiff's room and raped her.  His access to Plaintiff's room was facilitated by the fact that the door to her assigned floor had been left unlocked, ostensibly because it proved very difficult for authorized residents to unlock, even with the appropriate key.  Further, the door to Plaintiff's room had been left ajar because the air conditioning in the barracks was not functioning properly that evening.

Airman Nazario was convicted by court martial of unlawful entry, rape, and fraudulent enlistment.

Thereafter, Plaintiff initiated this action seeking monetary relief in federal court based upon various federal and state law theories. She sought relief under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680 for negligence, gross negligence, and violation of statutory duties, and under 42 U.S.C. § 1981 and Title VII, 42 U.S.C. § 2000e et. seq. for violation of civil rights. Aplt. App. at 1. She also included supplemental state law claims for breach of contract and fiduciary duties, and intrusion upon seclusion. Id. at 9. The district court dismissed the FTCA claims for lack of subject matter jurisdiction based upon the Feres doctrine. Id. at 31-41. It dismissed the civil rights claims for failing to state a claim under Fed. R. Civ. P. 12(b)(6). Aplt. App. at 51-56. Thereafter, Plaintiff sought the trial judge's recusal under 28 U.S.C. § 455(a). The district court declined to recuse and then dismissed Plaintiff's breach of contract and fiduciary duty claims based on lack of subject matter jurisdiction and failure to state a claim, Fed. R. Civ. P. 12(b)(1) and (6). Aplt. App. at 95-98.

On appeal, Plaintiff contends that the district court erred (1) in ruling that a Dram Shop action based on Oklahoma public policy was barred by the Feres doctrine, (2) in dismissing her breach of contract and breach of fiduciary duty claims, (3) in dismissing her civil rights claims, and (4) in declining to recuse on

the basis of perceived bias or partiality.

## Discussion

### A. Standard of Review

The district court premised its dismissal of Plaintiff's FTCA claims on a lack of subject matter jurisdiction. In reaching this result, the district court reasoned that pursuant to the Feres doctrine, the FTCA's limited waiver of sovereign immunity did not extend to her claims. The court therefore lacked subject matter jurisdiction. Our cases, however, clearly hold that a dismissal of claims on the basis of the Feres doctrine is not purely jurisdictional, but implicates merits issues as well. See Pringle v. United States, 208 F.3d 1220, 1223-24 (10th Cir. 2000). Accordingly, this dismissal must be reviewed as would a grant of summary judgment. See Bell v. United States, 127 F.3d 1226, 1228 (10th Cir. 1997). "Our summary judgment standard of review requires us to determine de novo whether there is any genuine disputed issue of material fact and whether the prevailing party was entitled to judgment as a matter of law." Pringle, 208 F.3d at 1223. Having reviewed the record and the briefs, we conclude that there is no genuine issue of material fact. Thus we will review the district court's legal conclusions supporting dismissal of Plaintiff's FTCA claims de novo.

The district court dismissed Plaintiff's claims for violation of 42 U.S.C. § 1981 and Title VII under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Aplt. App. at 51-56. We review de novo dismissals for failure to state a claim under Rule 12(b)(6). Colo. Envtl. Coalition v. Wenker, No. 02-1254, 2004 WL 34490, at *4 (10th Cir. Jan. 7, 2004). The district court dismissed Gonzalez's claims for breach of contract and breach of fiduciary duty under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim. Aplt. App. at 95. Application of either of these standards is reviewed de novo. Wenker, 2004 WL 34490, at *4.

B.    FTCA Claims

In her original complaint, Plaintiff asserted claims of common law negligence based on the Air Force's failure properly to supervise Airman Nazario, its failure properly to maintain the barracks to which she was assigned, its failure adequately to check Nazario's criminal background prior to permitting his enlistment, and its failure to prevent intrusion into her seclusion. She also alleged violation of duties statutorily imposed by Oklahoma's Dram Shop Act, Okla. Stat. Ann. tit. 37, § 537. The district court found each of these claims barred by Feres. On appeal, Plaintiff does not challenge the dismissal of her claims based on common law tort, but does challenge the district court's dismissal of her action claiming violation of duties that she characterizes as expressly arising under

- 5 -

statute.

"Absent a waiver of sovereign immunity, the Federal Government is immune from suit." Loeffler v. Frank, 486 U.S. 549, 554 (1988). Congress has, however, provided a limited statutory exception to the general rule of sovereign immunity, allowing for recovery of monetary damages by those injured due to the negligent actions of government employees. See 28 U.S.C. §§ 1346(b), 2671-80. This waiver, contained in the Federal Tort Claims Act, grants the district courts jurisdiction over claims "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b).

In Feres, the Supreme Court held the FTCA's waiver of sovereign immunity inapplicable to suits "for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." 340 U.S. at 146. The primary justifications advanced in support of this result were (1) a desire to see the military regime governed exclusively by federal law rather than disparate state laws which would make the availability of recovery depend upon the purely coincidental location of one's duty station; (2) a general hesitancy on the part of the judiciary to second guess decisions regarding command and discipline within the military structure; and (3) the ready availability of an alternative

compensatory scheme for injured service personnel.  See id. at 143-45.

Later cases from this and other circuits concerning this doctrine generally focus on the question whether a given injury was "incident to service."  In Dreier v. United States, 106 F.3d 844, 848 (9th Cir. 1997), the Ninth Circuit set forth four factors to be used as guides in determining whether a given injury was incident to service and thus barred by Feres.  The four factors are

> (1) the place where the negligent conduct occurred; (2) the duty status of the plaintiff when the negligent act occurred; (3) the benefits accruing to the plaintiff because of his status as a service member; and (4) the nature of the plaintiff's activities at the time the negligent act occurred.

Id.

In deciding whether Feres acts as a jurisdictional bar to recovery, this court has used the four Dreier factors as general guideposts.  We applied those factors in Pringle, 208 F.3d at 1224.  There the plaintiff, an active duty member of the Army, sued the United States seeking monetary relief for injuries suffered when he was severely beaten outside a social club operated by the Army and located on a military base.  Finding plaintiff's claim barred by Feres, this court stressed that plaintiff was an active duty member of the Army at the time of his injury, and that his injury occurred on military property.  Further, plaintiff was afforded access to the club by virtue of his status as a member of the Army, and was "subject to military discipline and control while at the club." Id. at 1226.  Subjecting these

factors to a policy analysis, the court held that permitting liability would "result in much second-guessing of military decisions and involve judicial inquiry into military affairs which may impair military discipline and effectiveness." Id. at 1227 (quoting Pringle v. United States, 44 F. Supp. 2d 1168, 1176 (D. Kan. 1999)).

In Corey v. United States, No. 96-6409, 1997 WL 474521, at *3-5 (10th Cir. Aug. 20, 1997), an unpublished order and judgment, this court applied the same analytical framework to a factual scenario quite similar to that in the present case. There the plaintiff, an active duty member of the Air Force, attended an on-base party at which she was sexually assaulted by a senior officer. Finding her suit against the Air Force barred by Feres, this court found that plaintiff's attendance at the party "was a consequence of her military status" because the "party occurred on base and was organized and attended by military members." Id. at *5. As a supporting policy rationale, the court explained that "[a]llowing [this] lawsuit to proceed . . . would be inviting the district court to second-guess the military decisions made concerning the conduct that occurred at the on-base party. . . . This is precisely the type of second-guessing and intrusion into military affairs that the Feres doctrine was designed to prevent." Id.

Application of this analytical framework to the present case leads us to conclude that Plaintiff's claims are barred by Feres. Plaintiff's injuries occurred

on a military base while she was on active duty as a member of the Air Force and while she was subject to military discipline and control, all of which counsel in favor of finding this action barred by Feres. Plaintiff attempts to avoid application of Feres by arguing that the activities giving rise to liability here are not incident to military service. Neither "Plaintiff's being served alcohol at the open party" nor "sleeping while in an impaired condition" are "consequence[s] of her military status []or her military activities." Aplt. Br. at 17-18 (emphasis omitted). Thus, she argues, deciding liability in this case would not "invit[e] the court to second guess any military decision." Id. at 17. We analyze each of these activities in turn to determine whether they constitute activities incident to service under Feres.

In general, the applicable test for whether an activity is incident to service is far broader than Plaintiff suggests, encompassing most recreational and social opportunities afforded to service members by the military. See Bon v. United States, 802 F.2d 1092, 1095-96 (9th Cir. 1986) (finding claims arising from recreational boating accident barred by Feres). Plaintiff's attendance at the party which arguably gave rise to her injuries was a direct consequence of her military status. See Pringle, 208 F.3d at 1226. The fact that the party was attended by civilians as well as military personnel does not vitiate the fact that her attendance at the party was a direct consequence of her enlisted status. Although the party

here took place in an open "mod" area in the vicinity of barracks provided for enlisted personnel, rather than in a social club as in <u>Pringle</u>, Plaintiff does not allege that the "mod" area was essentially open to the public. <u>See</u> <u>Dreier</u>, 106 F.3d at 853 (finding <u>Feres</u> doctrine inapplicable when situs of soldier's injury was readily accessible by the general public). Plaintiff also was subject to military discipline and control while at the party. Thus, contrary to Plaintiff's suggestion, imposition of liability here, as in <u>Corey</u>, would serve to second-guess military policy concerning military discipline and training.

The same is true of Plaintiff's claim that "sleeping in an impaired state" is not an activity incident to service. Although this activity, like Plaintiff's attendance at the party, may not have been done in direct furtherance of a military objective, it nonetheless occurred on a military base while she was subject to military control and discipline. It implicates military experience and judgment.

Plaintiff's second argument against application of <u>Feres</u> here is that the duties she claims the Air Force breached are not a product of the common law tort, but rather arise expressly through statute. Accordingly, claims based upon those duties are not barred by <u>Feres</u>. Her claim is that by permitting alcohol to be served to her as well as her assailant, the Air Force violated a duty to minors imposed by the Dram Shop Act in Oklahoma. <u>See</u> Okla. Stat. Ann. tit. 37, § 537.

In support of her argument, Gonzalez cites <u>Hallett v. United States</u>

Department of Navy, 850 F. Supp. 874 (D. Nev. 1994), for the proposition that a duty imposed by state law precludes an exception to the waiver of liability contained in the FTCA. The argument represents, to be charitable, an extreme misreading of that case. There, plaintiffs, all non-military personnel, sought recovery against the United States for sexual assaults which took place during the 1990 and 1991 Tailhook conventions in Las Vegas. The pertinent issue before the court was whether the FTCA permitted governmental liability for any claims arising out of an instance of assault and battery. Discussing the limitations of the FTCA, the court explained that "the assault and battery exception does not bar recovery when a negligence claim against the government arises out of an incident of battery . . . when the government's liability is based on its breach of a duty owed the victim that is independent of its relationship . . . to the perpetrator." Id. at 878. The court thus explained that determining whether the government could be held liable under the FTCA required a prior determination of whether the government owed an independent duty to plaintiffs under Nevada law. Id. Nowhere did the court state, or even imply, that state substantive law could stretch the bounds of the FTCA. What is more, Hallett did not address the preclusive effects of the Feres doctrine. As all plaintiffs were non-military personnel, Feres was inapplicable. Plaintiff's reliance on Hallett is therefore misplaced.

Plaintiff's distinction between claims based on common law and claims based on statutorily imposed duties must fail as it is contrary to both the express holding in <u>Feres</u> and the policy considerations supporting that decision. In <u>Feres</u>, the Court made no distinction between claims based on the supporting legal theory, holding only that "the Government is not liable under the [FTCA] for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." 340 U.S. at 146. Such language clearly covers both injuries sustained as a result of breach of common law, as well as statutory duties. Furthermore, validating this distinction would only serve to realize an additional problem that the Court in <u>Feres</u> sought to avoid, namely the subjection of a traditionally federal institution to liability based on disparate state laws.

C.     <u>Breach of Contract and Breach of Fiduciary Duty</u>

Plaintiff also claimed damages under the Little Tucker Act, 28 U.S.C. § 1346(a)(2), for breach of an implied-in-fact contract between herself and the Air Force. Specifically, Plaintiff states that as a matter of law, the Air Force is required to follow its own internal regulations, and that these regulations expressly incorporate state law as concerns the distribution of alcohol to minors. Aplt. Br. at 20-21. This coupling of internal regulations with requirements of state law, Plaintiff contends, gives rise to a contract implied-in-fact on which Gonzalez was justified in relying. Consequently, she argues that breach of this

contract gives rise to governmental liability under the Little Tucker Act, which provides a jurisdictional grant for claims up to $10,000 founded "upon any express or implied contract with the United States." 28 U.S.C. § 1346(a)(2).[1]

Section 1346, however, "is itself only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages." United States v. Testan, 424 U.S. 392, 398 (1976). In order to recover against the United States on the basis of an implied contract, Plaintiff must couple her reliance on the Tucker Act with a statute or provision expressly authorizing monetary damages. See Army & Air Force Exch. Serv. v. Sheehan, 456 U.S. 728, 739-40 (1982) ("As Testan makes clear, jurisdiction over respondent's complaint cannot be premised on the asserted violation of regulations that do not specifically authorize awards of money damages.").

Plaintiff recognizes this line of authority and readily admits her inability to find a statute mandating monetary compensation for this type of violation. Instead, she relies upon Air Force regulations incorporating the Oklahoma Dram Shop Act and argues that, by incorporating this state statute into its regulations,

---

[1] As an additional basis for rejection of Plaintiff's claims here, we note that the relationship between a member of the armed forces and the government "do[es] not turn on contract doctrines but are matters of legal status even where compacts are made." Kania v. United States, 650 F.2d 264, 268 (Ct. Cl. 1981). Thus, her reliance on contract principles as a basis for her claims against the military is misplaced.

the Air Force also incorporated the liability provisions.  See Aplt. Br. at 23.

Despite the fact that Oklahoma courts have read the Dram Shop Act as giving rise to a private right of action for its violation, see Brigance v. Velvet Dove Rest, Inc., 725 P.2d 300, 301 (Okla. 1986), no express or implied mandate for compensation by the federal government contemplated in Testan and Sheehan exists.  See also United States v. Mitchell, 463 U.S. 206, 216-17 (1983).  It goes without saying that the presence of a private right of action grounded in state law does not explicitly authorize the assessment of monetary damages against the federal government, particularly given the need for an express waiver of sovereign immunity.

D.      Section 1981 and Title VII Claims

Plaintiff claims that the district court erred in dismissing her claims under 42 U.S.C. § 1981 and Title VII.  Although the legal arguments on appeal are lacking in detail, these claims fail as a matter of law.  Section 1981 and Title VII are both statutes designed to eliminate invidious discrimination by state and private actors.  Section 1981, therefore, is limited in its applicability to actions taken "under color of State law."  42 U.S.C. § 1981(c); see Davis-Warren Auctioneers v. FDIC, 215 F.3d 1159, 1161 (10th Cir. 2000).  The military acts under color of federal rather than state law, rendering § 1981 inapplicable here.  Further, a viable § 1981 claim requires that Plaintiff allege discrimination on the

basis of race.  Reynolds v. Sch. Dist. No. 1, 69 F.3d 1523, 1532 (10th Cir. 1995).

Nowhere does her complaint allege that she was discriminated against on the

basis of her race.  For these basic reasons, the § 1981 claim fails.

As to her claim for relief under Title VII, this court has clearly held Title

VII inapplicable to members of the armed forces.  See Salazar v. Heckler, 787

F.2d 527, 530 (10th Cir. 1986); Randall v. United States, 95 F.3d 339, 344 (4th

Cir. 1996) (same).  Plaintiff's Title VII claims were, therefore, properly

dismissed.

E.  Motion for Recusal

Plaintiff moved to have the district judge recuse himself from further

participation in the case due to perceived bias.  The district court denied

Plaintiff's motion.  Plaintiff now appeals that denial, but only insofar as it might

apply to subsequent proceedings in the district court.  Plaintiff does not seek to

have the dismissal of her complaint vacated on this basis.  Though this unusual

request for relief detracts somewhat from the overall force of Plaintiff's

argument, the issue was raised below and we review the denial of a motion to

recuse for abuse of discretion.  Higganbotham v. Oklahoma ex rel. Okla. Transp.

Comm'n., 328 F.3d 638, 645 (10th Cir. 2003).

"Any justice, judge, or magistrate of the United States shall disqualify

himself in any proceeding in which his impartiality might be questioned."  28

- 15 -

U.S.C. § 455. Plaintiff contends that the district judge's background as a career military lawyer combined with his raising the jurisdictional issue concerning Plaintiff's negligence claims render his actions susceptible to a perception of partiality. Our cases make clear, however, that adverse rulings alone do not constitute a basis for recusal. Sac & Fox Nation v. Cuomo, 193 F.3d 1162, 1168 (10th Cir. 1999). Clearly, it was not improper for the district judge to raise the issue of subject matter jurisdiction. Jurisdiction is an essential prerequisite to the existence of a justiciable controversy and it is the duty of the court to ensure its own jurisdiction even if the parties fail to raise the issue. Okla. Tpk. Auth. v. Bruner, 259 F.3d 1236, 1241 (10th Cir. 2001). Finally, there is no evidence supporting Plaintiff's suggestion that the district judge's career as a military lawyer creates an appearance or risk of partiality.

The judgment of the district court dismissing the complaint is therefore AFFIRMED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge

No. 03-6047, Gonzalez v. United States Air Force

**LUCERO**, J., concurring.

Neither disagreement with the result reached, nor the analysis pursued by the majority prompt me to write separately in this case. I thus join the majority opinion. What does prompt me to write separately is my concern that the Feres doctrine, Feres v. United States, 340 U.S. 135 (1950), used here to bar claims arising from sexual assault, has grown far afield from the unremarkable facts that led to its pronouncement by the Court in 1950.

Our circuit's holding in Pringle, interpreting Feres' "incident to service" language to apply to "all injuries suffered by military personnel that are even remotely related to the individual's status as a member of the military," Pringle, 208 F.3d 1220, 1223–24 (10th Cir. 2000) (citations omitted), compels the result we reach today. So broad is that language that, remarkably, we now consider sexual assault as "incident to service." As noted in the majority opinion, a case factually similar to this one—barring recovery for sexual assault of a female airman—was not considered precedential. See, e.g., Corey v. United States, No. 96-6409, 1997 WL 474521 (10th Cir. Aug. 20, 1997) (unpublished). Nor under the broad Feres-Pringle standard, is this case precedential.

Because neither the facts nor the holding in Feres suggest that the Supreme Court intended such an expansive reach, it is my belief that such an interpretation should be reconsidered. Notably, the year before Feres was decided, the Supreme

Court heard <u>Brooks v. United States</u>, 337 U.S. 49 (1949).[1]  In <u>Brooks</u>, the Court

held that two service members, who were injured while off-base and on leave by a

negligently driven Army truck, were not barred from recovering under the FTCA

because the accident "had nothing to do with [their] army careers" and their

"injuries [were] not caused by their service except in the sense that all human

events depend upon what has already transpired."  <u>Id.</u> at 52.

In contrast, <u>Feres</u> involved three consolidated cases, all of which

considered injuries that "ar[ose] out of or in the course of military duty."  340

U.S. at 146.  Justice Jackson, speaking for the court in <u>Feres</u>, was careful to

distinguish the plaintiffs in <u>Brooks</u> from the plaintiffs in <u>Feres</u>, observing that the

plaintiffs in <u>Brooks</u> were not on duty, under no orders, and not on a mission;

therefore, their "relationship while on leave was not analogous to that of a soldier

injured while performing duties under orders."  <u>Id.</u>

As in <u>Brooks</u>, the sexual assault of Airman Gonzalez cannot be compared

to  injuries received while performing duties under orders.  Surely, no one should

suggest that when young Americans sign up for military service, they can expect

that potential sexual assaults upon them will be routinely considered "incident" to

that service.  The only link between the sexual assault of Airman Gonzalez and

---

[1] <u>Brooks</u> has neither been overruled nor expressly disapproved of by the
Court.  <u>See</u> <u>United States v. Johnson</u>, 481 U.S. 681, 698 (1987) (Scalia, J.,
dissenting).

her military service is attenuated at best, in the same sense as considered and rejected in <u>Brooks</u>.  <u>Brooks</u>, 337 U.S. at 52.

Thus it seems to me that were we deciding this case under the authoritative holding of <u>Brooks</u>, rather than the tangential interpretation of <u>Feres</u>, which our circuit and other circuits have followed, the result today would be different.  It is my hope that the expansive reach of <u>Feres</u> will be revisited.